**Rough Rock Community School
(Rough Rock School Board, Inc.), et al.,
Appellants-Petitioners,
v.
Navajo Nation, Appellee-Respondent.
Decided March 14, 1996**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Petitioners; and Frank M. Seanez, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for the Respondent.

Opinion delivered by AUSTIN, Associate Justice.

This petition asks us to reconsider our decision filed on November 8, 1995. The issue is whether, under the provisions of the Navajo Nation Bill of Rights,[1] 1 N.T.C. §§ 1-9 (1986), a Navajo Nation election apportionment plan which directs school boards to be selected and constituted in a manner different than that stated in the schools' state articles of incorporation or by-laws is valid. The petition has merit under Rule 19(c) of the Navajo Rules of Civil Appellate Procedure.

I

The Petitioners-Appellants[2] (schools) are located within the exterior boundaries of the Navajo Nation and each is incorporated under either the laws of Arizona or New Mexico. In our November 8, 1995 decision, we held that the Navajo Nation Election Code applies to the schools. We also noted that the apportionment plan "directed that the school boards be selected and constituted in a manner different than that stated in the Appellant schools' Articles of Incorporation or corporate by-laws." *Rough Rock Community School, et al. v. Navajo Nation*, 7 Nav. R. 168, 169 (1995). The conflict between Navajo Nation law and the school boards' state articles of incorporation or by-laws creates a due

---

1. We reject the Petitioners' suggestion that we apply the Indian Civil Rights Act, 25 U.S.C. § 1301-1303 (1968), to this issue. It is likely that the Act is unconstitutional under *United States v. Lopez*, 514 U.S. 549, 131 L.Ed 2d 626 (1995).

2. Rough Rock Community School, Ramah Navajo Community School, Borrego Pass Community School, each school's local school board, and the Rough Rock Chapter.

process issue which we address in this decision. We also discuss the extent to which the Navajo Nation will give comity recognition and enforcement to state articles of incorporation or by-laws.

## II

In *Benally v. Gorman*, 5 Nav. R. 272, 277-78 (W.R. Dis. Ct. 1987), the district court ruled that the Navajo Nation had the inherent power to authorize an incorporation prior to the enactment of the Navajo Nation Corporation Code on January 30, 1986. That decision also stated that corporations have due process rights and that "means ... changes in the corporate structure must be according to law." *Id.* at 283. The schools (Rough Rock Community School, Ramah Navajo Community School, and Borrego Pass Community School) were incorporated under either the laws of Arizona or New Mexico before the Navajo Nation Corporation Code became law. Essentially, the school boards were created for the specific purpose of obtaining federal monies under the Indian Self-Determination and Education Assistance Act of 1975 (Act), 25 U.S.C. § 450a-450n. The Navajo Nation Council certified the schools as "tribal organizations" to receive federal grants. Thus, the question is whether any conflict between state-sanctioned governance as outlined in the schools' articles of incorporation or by-laws and Navajo Nation law rise to a due process violation.

In *Arizona Pub. Serv. Co. v. Office of Navajo Labor Relations*, 6 Nav. R. 246, 255-256 (1990), we held that the Navajo Nation Council has the governmental authority to regulate non-Indian businesses. Arizona Public Service Company (APS) asserted that because it had rights to be free of regulations under certain leases and agreements with the Navajo Nation, such agreements precluded the Navajo Nation from regulating APS as a matter of due process. We rejected APS' argument, finding that the Navajo Nation has police power to make regulatory changes.[3] In this case, neither the Navajo Nation Council, nor the Education Committee of the Navajo Nation Council, took any action which divested the Navajo Nation of its inherent authority to regulate the "tribal organizations" (schools) it certified under the Act.

The school boards were certified by the Navajo Nation as "tribal organizations" specifically for obtaining federal monies under the Act. Navajo Nation certification of the schools as "tribal organizations" under Navajo Nation law is essential to their very existence. In fact, as we said in our former opinion, the schools are "inextricably intertwined with the Navajo Nation government...." *Rough Rock Community School*, 7 Nav. R. at 171. If the schools want to take advantage of their status as "tribal organizations," they must comply with Navajo

---

3. The Ninth Circuit subsequently ruled that as a matter of federal law, the lease agreements between APS and the Navajo Nation waived the Nation's regulatory authority over APS. *Arizona Pub. Serv. Co. v. Aspaas*, 69 F.3d 1026 (9th Cir. 1995). That decision was decided on the narrow ground of lease interpretation and it does not invalidate our prior holding on the due process aspects of regulation.

Nation organizational requirements. Thus, we do not find that the apportionment plan deprived the schools of property to satisfy a due process violation. The plan simply provides that as "tribal organizations," the schools must comply with Navajo Nation expectations as to their governance.

The due process principle which applies is that there cannot be a "taking" of property without just compensation. The Navajo Nation Election Code, as it applies to these schools, does not affect property interests. It only affects management issues which are of interest to the Navajo Nation as a sovereign. Accordingly, we hold that there was no "taking" by the imposition of new regulatory requirements and thus no violation of due process.

## III

The schools are foreign corporations doing business within the Navajo Nation. They apparently chose to incorporate under state law because there was no Navajo Nation corporation code at the time they were created. To what extent must the Navajo Nation honor state arrangements, as chosen by the school boards?[4]

The Navajo Nation law of recognition of foreign court decisions, statutes or acts of state (also known as "public acts") is comity. *In re Guardianship of Chewiwi*, 1 Nav. R. 120, 126 (1977); *Anderson Petroleum Serv., Inc. v. Chuska Energy & Petroleum Co.*, 4 Nav. R. 187, 189-91 (W. R. Dis. Ct. 1983); *Pela v. Peabody Coal Co.*, 6 Nav. R. 239, 245 (1990). Under the Navajo Nation doctrine of comity, a foreign statute, court decision or public act must comply with Navajo Nation public policy. In our prior decision, we discussed that public policy as to the selection and governance of community school boards.

Therefore, state articles of incorporation (or by-laws) adopted under state law cannot be recognized by comity except as they comply with Navajo Nation law. Indeed, the Navajo Nation can prohibit the petitioner schools from doing business within the Navajo Nation if they do not comply with Navajo law.

## IV

The schools raise an issue which is very important to Navajo Nation economic development: Maintenance of a favorable climate to outside business. The schools cite our decisions which express concern for promoting economic development and prosperity, e.g. *TBI Contractors v. The Navajo Tribe of Indians*, 6 Nav. R. 57 (1988); *Largo v. Gregory & Cook, Inc.*, 7 Nav. R. 111 (1995); and *Reservation Business Services v. Albert*, 7 Nav. R. 123 (1995). The Navajo Nation courts are aware of the economic consequences of their decisions, and they have a reputation for protecting legitimate business interests. Frye, *Lender*

---

4. The schools do not claim that the organizational arrangements in their articles of incorporation or by-laws are required by state law. It should be noted that the schools can amend those documents to comply with Navajo Nation law.

*Recourse in Indian Country: A Navajo Case Study*, 21 N.M.L.Rev. 275 (1991). Today's decision does not mark a departure from that policy. Business entities and semi-public organizations, such as the community school districts here, have due process protections under the Navajo Nation Bill of Rights, 1 N.T.C. § 3. However, that does not limit the Navajo Nation's sovereign authority to regulate business, establish the rules for doing business within the Navajo Nation, or decide which acts of state of foreign jurisdictions will or will not be honored within the Navajo Nation as a matter of comity. In other words, we treat business entities in the same manner as the states treat business entities.